FILED

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

2012 FEB 13 P 4: 26

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

CIVIL NO. 1:12cv144
LMB/TCB

FUNDS UP TO AND INCLUDING THE AMOUNT OF $200,767.56 IN U.S. CURRENCY ON DEPOSIT IN MERCANTIL COMMERCEBANK, ACCOUNT #7501545806, TITLED IN THE NAME OF FIDEL SABAS BORRERO, AND/OR PROPERTY TRACEABLE THERETO;

FUNDS UP TO AND INCLUDING THE AMOUNT OF $112,967.18 IN U.S. CURRENCY ON DEPOSIT IN CITIBANK, ACCOUNT #3196763553, TITLED IN THE NAME OF MIGUEL JOSE MOUSADI, AND/OR PROPERTY TRACEABLE THERETO;

FUNDS UP TO AND INCLUDING THE AMOUNT OF $49,702.73 IN U.S. CURRENCY ON DEPOSIT IN BANK OF AMERICA, ACCOUNT #003672189686, TITLED IN THE NAME OF EDARMIS DE NARANJO, AND/OR PROPERTY TRACEABLE THERETO;

FUNDS UP TO AND INCLUDING THE AMOUNT OF $86,371.48 IN U.S. CURRENCY ON DEPOSIT IN JP MORGAN CHASE BANK, ACCOUNT #000000791097496, TITLED IN THE NAME OF JUAN GUZHNAY, AND/OR PROPERTY TRACEABLE THERETO;

FUNDS UP TO AND INCLUDING THE

AMOUNT OF $215,329.26 IN U.S. CURRENCY ON DEPOSIT IN CITIBANK, ACCOUNT #40031293547, TITLED IN THE NAME OF CHUN WAI LAM WONG, AND/OR PROPERTY TRACEABLE THERETO;

FUNDS UP TO AND INCLUDING THE AMOUNT OF $912,126.29 IN U.S. CURRENCY HELD IN CITIBANK, ACCOUNT #9117152367, TITLED IN THE NAME OF INVERSIONES PLUS, PC, AND/OR PROPERTY TRACEABLE THERETO;

FUNDS UP TO AND INCLUDING THE AMOUNT OF $55,008.68 IN U.S. CURRENCY ON DEPOSIT IN BANK OF THE WEST, ACCOUNT #717038939, TITLED IN THE NAME OF GRACEFUL FLOWER CORPORATION, AND/OR PROPERTY TRACEABLE THERETO;

FUNDS UP TO AND INCLUDING THE AMOUNT OF $11,686.61 IN U.S. CURRENCY ON DEPOSIT IN JP MORGAN CHASE BANK, ACCOUNT #000003411124930, TITLED IN THE NAME OF ANA CAROLINA NAVARRO, AND/OR PROPERTY TRACEABLE THERETO;

FUNDS UP TO AND INCLUDING THE AMOUNT OF $10,930.08 IN U.S. CURRENCY ON DEPOSIT IN BANK OF AMERICA, ACCOUNT #0376343053, TITLED IN THE NAME OF YOLY CAROLINA FERNANDEZ, AND/OR PROPERTY TRACEABLE THERETO;

FUNDS UP TO AND INCLUDING THE AMOUNT OF $19,016.89 IN U.S. CURRENCY ON DEPOSIT IN BANK OF

AMERICA, ACCOUNT #229036238465, TITLED IN THE NAME OF YSAIDA MORALES TOVAR, AND/OR PROPERTY TRACEABLE THERETO;

FUNDS UP TO AND INCLUDING THE AMOUNT OF $20,435.93 IN U.S. CURRENCY ON DEPOSIT IN MERCANTIL COMMERCEBANK, ACCOUNT #7500091006, TITLED IN THE NAME OF LICIO LUGARINI, AND/OR PROPERTY TRACEABLE THERETO;

FUNDS UP TO AND INCLUDING THE AMOUNT OF $444,838.84 IN U.S. CURRENCY ON DEPOSIT IN BRANCH BANKING & TRUST, ACCOUNT #1100001103375, TITLED IN THE NAME OF JOSEPH YECUTIELI, AND/OR PROPERTY TRACEABLE THERETO;

FUNDS UP TO AND INCLUDING THE AMOUNT OF $453,414.26 IN U.S. CURRENCY ON DEPOSIT IN MERCANTIL COMMERCEBANK, ACCOUNT #8301168406, TITLED IN THE NAME OF LUCIA SUTERA, AND/OR PROPERTY TRACEABLE THERETO;

FUNDS UP TO AND INCLUDING THE AMOUNT OF $251,655.74 IN U.S. CURRENCY ON DEPOSIT IN WELLS FARGO BANK (FORMERLY KNOWN AS WACHOVIA BANK), ACCOUNT #1010283701694, TITLED IN THE NAME OF JHAN GABRIEL HABACH WAHBE, AND/OR PROPERTY TRACEABLE THERETO;

FUNDS UP TO AND INCLUDING THE AMOUNT OF $242,301.79 IN U.S. CURRENCY ON DEPOSIT IN BANK OF AMERICA, ACCOUNT #005495251731,

TITLED IN THE NAME OF LIGIA JOSEFINA GUEDEZ, AND/OR PROPERTY TRACEABLE THERETO.

Defendants-in-rem.

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

Plaintiff, United States of America, brings this complaint in accordance with Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action to forfeit and condemn to the use and benefit of the United States of America property involved in violations of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h) that are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 984.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

3. Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A), as acts or omissions giving rise to the forfeiture took place in this district.

## THE DEFENDANTS-IN-REM

4. The defendants-in-rem consist of the following:

a. Funds up to and including the amount of $200,767.56 in U.S. currency on deposit in Mercantil Commercebank, account #7501545806, titled in the name of Fidel Sabas Borrero, and/or property traceable thereto;

b. Funds up to and including the amount of $112,967.18 in U.S. currency on deposit in Citibank, account #3196763553, titled in the name of Miguel Jose Mousadi, and/or property traceable thereto;

c. Funds up to and including the amount of $49,702.73 in U.S. currency on deposit in Bank of America account #003672189686, titled in the name of Edarmis de Naranjo, and/or property traceable thereto;

d. Funds up to and including the amount of $86,371.48 in U.S. currency on deposit in JP Morgan Chase Bank, account #000000791097496, titled in the name of Juan Guzhnay, and/or property traceable thereto;

e. Funds up to and including the amount of $215,329.26 in U.S. currency on deposit in Citibank, account #40031293547, titled in the name of Chun Wai Lam Wong, and/or property traceable thereto;

f. Funds up to and including the amount of $912,126.29 in U.S. currency held in Citibank, account #9117152367, titled in the name of Inversiones Plus, PC, and/or property traceable thereto;

g. Funds up to and including the amount of $55,008.68 in U.S. currency on deposit in Bank of the West, account #717038939, titled in the name of Graceful Flower Corporation, and/or property traceable thereto;

h. Funds up to and including the amount of $11,686.61 in U.S. currency on deposit in JP Morgan Chase Bank, account #000003411124930, titled in the name of Ana Carolina Navarro, and/or property traceable thereto;

i. Funds up to and including the amount of $10,930.08 in U.S. currency on deposit in Bank of America, account #0376343053, titled in the name of Yoly Carolina Fernandez, and/or property traceable thereto;

j. Funds up to and including the amount of $19,016.89 in U.S. currency on deposit in Bank of America, account #229036238465, titled in the name of Ysaida Morales Tovar, and/or property traceable thereto;

k. Funds up to and including the amount of $20,435.93 in U.S. currency on deposit in Mercantil Commercebank, account #7500091006, titled in the name of Licio Lugarini, and/or property traceable thereto;

l. Funds up to and including the amount of $444,838.84 in U.S. currency on deposit in Branch Banking & Trust, account #1100001103375, titled in the name of Joseph Yecutieli, and/or property traceable thereto;

m. Funds up to and including the amount of $453,414.26 in U.S. currency on deposit in Mercantil Commercebank, account #8301168406, titled in the name of Lucia Sutera, and/or property traceable thereto;

n. Funds up to and including the amount of $251,655.74 in U.S. currency on deposit in Wells Fargo Bank (formerly known as Wachovia Bank), account #1010283701694, titled in the name of Jhan Gabriel Habach Wahbe, and/or property traceable thereto;

o. Funds up to and including the amount of $242,301.79 in U.S. currency on deposit in Bank of America, account #005495251731, titled in the name of Ligia Josefina Guedez, and/or property traceable thereto.

5. The defendants-in-rem are not within the possession, custody or control of the United States.

## FACTS

6. In July 2010, special agents of the Drug Enforcement Administration (hereafter "DEA") and Internal Revenue Service Criminal Investigations (hereafter "IRS") began an undercover investigation of the drug trafficking and related money laundering activities by Ernesto MAFFI (hereafter "MAFFI") and Leonardo JIMENEZ (hereafter "JIMENEZ").

7. As part of the DEA and IRS undercover investigation, two confidential informants (hereafter "CS-1" or "CS-2") who have provided reliable information that has been corroborated throughout the investigation, met with MAFFI and JIMENEZ on numerous occasions. In one meeting, JIMENEZ told CS-1 that MAFFI was a Venezuelan national living in Cucuta, Colombia who was in the business of laundering narcotics proceeds at a rate of 13% of the total funds laundered. JIMENEZ said that MAFFI used two different money laundering methods: (1) sending bulk shipments of currency; and (2) sending money via wire transfers.

8. During a meeting held in Colombia in July 2010, MAFFI told CS-1 and CS-2 that his drug trafficking organization was responsible for coordinating the international shipment of multiple kilograms of cocaine on a monthly basis. During the meeting, JIMENEZ also told CS-1 that MAFFI used a bank account in Hong Kong to launder narcotics proceeds.

9. In a meeting held in early 2011, MAFFI said that he had approximately $7 million dollars in drug trafficking proceeds in New York, and that he needed assistance in laundering these narcotics proceeds back to Colombia. MAFFI expressed concerns that law enforcement authorities in the United States may have been informed about his activities, and requested that

someone else handle the movement of his drug proceeds from the United States and other locations.

10. According to MAFFI, half of the $7 million stashed in New York were in bills of $20.00 denominations, while the other half were in bills of $100.00 denominations. MAFFI said that he would send his sister, Maria Gisela NARCISO-Pino (hereafter "NARCISO") to New York to coordinate the collection of the money in New York before delivering it to CS-2.

11. During the early 2011 meeting, MAFFI explained that he (MAFFI) contacted legitimate companies in Colombia that had business debts as a result of the recent closure of the border between Venezuela and Colombia. MAFFI said that he used the invoices related to the companies' legitimate transactions to account for the incoming narcotics proceeds wire transfers. To further legitimize the transactions, MAFFI requested that the transfers of the narcotics proceeds match the exact amounts listed on those invoices.

12. During the course of the investigation, MAFFI and NARCISO directed others, known and unknown, to deliver drug proceeds to CS-2 and agents acting in an undercover capacity for laundering. The narcotics proceeds were usually concealed inside suitcases and bundled in rubber bands, before being delivered inside hotel rooms and public locations such as train stations and on the street. The U.S. currency delivered at MAFFI's and/or NARCISO's direction was deposited into a DEA undercover bank account.

13. At the direction of MAFFI, DEA agents acting in an undercover capacity initiated wire transfers into the domestic and international defendant-in-rem bank accounts provided by MAFFI.

14. On or about February 7, 2011, MAFFI's sister, NARCISO, said that the organization's drug distribution cell holding the money was located in the Bronx, NY. NARCISO suggested that the money pickups take place at a stash house in the Bronx. After CS-2 refused to pickup the money at a stash house, NARCISO agreed that the deliveries of narcotics proceeds would take place at the Vince Lombardi rest stop on the New Jersey Turnpike.

15. On February 8, 2011, NARCISO traveled to New York. While en route to the Vince Lombardi rest stop in New Jersey, NARCISO assured that her people would be ready at approximately 1:00 PM to deliver the proceeds. NARCISO explained that MAFFI's organization worked with two separate drug trafficking cells in New York, and that one of those cells would be making the delivery on that date.

16. After arriving at the Vince Lombardi rest stop, NARCISO said that she had received an email from MAFFI indicating that the associates would not be ready with the money until the following day. MAFFI also sent several text messages apologizing for his associates' delay.

17. On February 10, 2011, JIMENEZ delivered a suitcase containing $393,775 in U.S. currency to the DEA. MAFFI provided bank account information for multiple bank accounts where the money should be transferred.

18. At MAFFI's request, a portion of the $393,775 in narcotics proceeds delivered on February 10, 2011, were wire transferred from Centreville, VA into the following defendant-in-rem bank accounts:

| DATE | AMOUNT LAUNDERED | BENEFICIARY BANK | ACCOUNT NO. | BENEFICIARY |
|---|---|---|---|---|
| 2/15/11 | $20,000 | Mercantil Commercebank | #xxxxxx2112 | Miguel Jose Mousadi |
| 2/15/11 | $32,000 | Mercantil Commercebank | #7501545806 | Fidel Sabas Borrero |
| 2/15/11 | $30,000 | Bank of America | #003672189686 | Edarmis de Naranjo |
| 2/15/11 | $60,000 | JP Morgan Chase Bank | #000000791097496 | Juan Guzhnay |

19. On February 11, 2011, JIMENEZ and NARCISO delivered a suitcase containing approximately $994,230 in U.S. currency to the DEA. Following that delivery, MAFFI provided the bank account information for the accounts to which the drug proceeds should be transferred.

20. At MAFFI's request, a portion of the $994,230 in narcotics proceeds delivered on February 11, 2011, were wire transferred from an undercover DEA bank account into the following defendant-in-rem bank account:

| DATE | AMOUNT LAUNDERED | BENEFICIARY BANK | ACCOUNT NO. | BENEFICIARY |
|---|---|---|---|---|
| 2/22/11 | $90,000 | Citibank | #40031293547 | Chun Wai Lam Wong |

21. On February 15, 2011, JIMENEZ delivered three suitcases containing approximately $2,593,750 in U.S. currency at the Hotel Pennsylvania in New York.

22. At MAFFI's request, a portion of the $2,593,750 in narcotics proceeds delivered on February 15, 2011, was wire transferred from an undercover DEA bank account to the following defendant-in-rem bank accounts:

| DATE | AMOUNT LAUNDERED | BENEFICIARY BANK | ACCOUNT NO. | BENEFICIARY |
|---|---|---|---|---|
| 2/25/11 | $300,000 | Citibank | #9117152367 | Inversiones Plus, PC |

| 3/2/11 | $44,000 | Bank of the West | #717038939 | Graceful Flower Corp |
|---|---|---|---|---|
| 3/3/11 | $11,200 | JP Morgan Chase Bank | #000003411124930 | Ana Carolina Navarro |
| 3/4/11 | $10,000 | Bank of America | #0376343053 | Yoly Carolina Fernandez |
| 3/4/11 | $18,000 | Bank of America | #229036238465 | Ysaida Morales Tovar |
| 3/4/11 | $10,000 | Mercantil Commercebank | #7500091006 | Licio Lugarini |
| 3/4/11 | $389,524 | BB&T | #1100001103375 | Joseph Yecutieli |
| 3/8/11 | $60,000 | Mercantil Commercebank | #9117152367 | Inversiones Plus, PC |

23. On the evening of February 15, 2011, law enforcement officials seized $2,002,124 in U.S. currency from individuals who had been surveilled earlier that day delivering suitcases concealing part of the $2.5 million in narcotics proceeds that JIMENEZ delivered to the DEA on February 15, 2011.

24. On February 16, 2011, JIMENEZ delivered a suitcase containing $399,745 in U.S. currency in narcotics proceeds to the DEA. At MAFFI's request, a portion of the $399,745 in narcotics proceeds delivered on February 16, 2011, was wire transferred to bank accounts outside of the United States.

25. On March 8, 2011, law enforcement seized $1,821,775 in U.S. currency from NARCISO in her hotel room at the Hotel Pennsylvania in New York, New York.

26. On March 9, 2011, MAFFI instructed CS-2 to stop using his/her telephones because his (MAFFI's) sister had been caught with $1.9 million by law enforcement at the same location where CS-2 had picked up the money.

27. On March 30, 2011, JIMENEZ delivered $385,105 in U.S. currency at the 30th Street Train Station in Philadelphia, PA. On that same date, MAFFI asked that the narcotics proceeds delivered be wired in two (2) transfers to a Citibank account in Miami, FL.

28. At MAFFI's request, the narcotics proceeds delivered on March 30, 2011, were wire transferred from an undercover DEA bank account to the following bank accounts:

| DATE | AMOUNT LAUNDERED | BENEFICIARY BANK | ACCOUNT NO. | BENEFICIARY |
|---|---|---|---|---|
| 4/1/11 | $184,669.97 | Citibank | #9117152367 | Inversiones Plus, PC |
| 4/1/11 | $184,669.97 | Citibank | #9117152367 | Inversiones Plus, PC |

29. On September 13, 2011, associates of MAFFI's drug trafficking organization delivered $366,170 in U.S. currency in small denominations in Mexico City, Mexico. Three days later, on September 16, 2011, MAFFI provided the DEA with the bank account information for the account where he wanted the money transferred. During a telephone conversation between MAFFI and CS-2 recorded following this delivery, MAFFI told CS-2 that he (MAFFI) had personally counted the money before it was delivered in Mexico City. At MAFFI's request, a portion of the $366,170 in narcotics proceeds delivered on September 13, 2011, was wire transferred from an undercover DEA bank account to a bank account outside of the United States.

30. From February 10, 2011, up to and including September 13, 2011, members and associates of MAFFI's drug trafficking and money laundering organization delivered $5,132,775 in narcotics proceeds to the DEA to be laundered.

31. As of February 15, 2011, when DEA laundered the $32,000 in narcotics proceeds at MAFFI's request, the defendant-in-rem, Mercantil Commercebank, account number 7501545806, in the name of Fidel Sabas Borrero, had a balance of $168,767.56 which became involved in the money laundering transaction, for a total of $200,767.56.

32. As of February 15, 2011, Mercantil Commercebank, account number xxxxxx2112, in the name of Miguel Jose Mousadi, had a balance of $63,052.18. The balance was commingled with $20,000 in narcotics proceeds DEA had laundered through the account at MAFFI's request, plus incoming $14,960 and $14,955 wire transfers from Banesco account number 201000177727, and Banesco account number 201000274765, respectively. The total $112,967.18 involved in the foregoing money laundering transactions were traced into the defendant-in-rem, Citibank account number 3196763553, in the name of Miguel Jose Mousadi.

33. As of February 15, 2011, when DEA laundered the $30,000 in narcotics proceeds at MAFFI's request, the defendant-in-rem, Bank of America, account number 003672189686 in the name of Edarmis De Naranjo had a balance of $19,702.73 which became involved in the money laundering transaction, for a total of $49,702.73.

34. As of February 15, 2011, when DEA laundered the $60,000 of narcotics proceeds at MAFFI's request, through the defendant-in-rem, JP Morgan Chase Bank, account number 000000791097496, in the name of Juan Guzhnay, the account had a balance of $26,371.48 which became involved in the money laundering transaction, for a total of $86,371.48.

35. As of February 22, 2011, when DEA laundered the $90,000 in narcotics proceeds at MAFFI's request through the defendant-in-rem, Citibank, account number 40031293547, in

the name of Chun Wai Lam Wong at Citibank, the account had a balance of $125,329.26 which became involved in the money laundering transaction, for a total of $215,329.26.

36. As of February 25, 2011, when DEA made the first of several wire transfers totaling $867,863.94 in narcotics proceeds at MAFFI's request through the defendant-in-rem, Citibank, account number 9117152367, in the name of Inversiones Plus, PC, the account had a balance of $44,262.35 which became involved in the money laundering transaction, for a total of $912,126.29.

37. As of March 2, 2011, when DEA laundered the $44,000 in narcotics proceeds at MAFFI's request through the defendant-in-rem, Bank of the West, account number 717038939, in the name of Graceful Flower Corporation, the account had a balance of $11,008.68 which became involved in the money laundering transaction, for a total of $55,008.68.

38. As of March 3, 2011, when DEA laundered the $11,200 in narcotics proceeds at MAFFI's request through the defendant-in-rem, JP Morgan Chase Bank, account number 000003411124930, in the name of Ana Carolina Navarro, the account had a balance of $486.61, which became involved in the money laundering transaction, for a total of $11,686.61.

39. As of March 4, 2011, when DEA laundered the $10,000 in narcotics proceeds at MAFFI's request through the defendant-in-rem, Bank of America, account number 0376343053, in the name of Yoly Carolina Fernandez, the account had a balance of $930.08, which became involved in the money laundering transaction, for a total $10,930.08.

40. As of March 4, 2011, when DEA laundered the $18,000 in narcotics proceeds at MAFFI's request through the defendant-in-rem, Bank of America, account number

229036238465, in the name of Ysaida Morales Tovar, the account had a balance of $1,016.89 which became involved in the money laundering transaction, for a total of $19,016.89.

41. As of March 4, 2011, when DEA laundered the $10,000 in narcotics proceeds at MAFFI's request through the defendant-in-rem, Mercantil Commercebank, account number 7500091006, in the name of Licio Lugarini, the account had a balance of $10,435.93 which became involved in the money laundering transaction, for a total of $20,435.93.

42. As of March 4, 2011, when DEA laundered the $389,524 in narcotics proceeds at MAFFI's request through the defendant-in-rem, Branch Banking & Trust (BB&T), account number 1100001103375, in the name of Joseph Yecutieli, the account had a balance of $55,314.84 which became involved in the money laundering transaction, for a total of $444,838.84.

43. As of March 7, 2011, when DEA laundered the $100,000 in narcotics proceeds at MAFFI's request through the defendant-in-rem, Mercantil Commercebank, account number 8301168406, in the name of Lucia Sutera, the account had a balance of $353,414.26 which became involved in the money laundering transaction, for a total of $453,414.26.

44. As of March 7, 2011, when DEA laundered the $30,000 in narcotics proceeds at MAFFI's request through the defendant-in-rem, Wells Fargo, account number 1010283701694, in the name of Jhan Gabriel Habach Wahbe, the account had a balance of $221,655.74 which became involved in the money laundering transaction, for a total of $251,655.74.

45. As of March 8, 2011, when DEA laundered the $40,000 in narcotics proceeds at MAFFI's request through the defendant-in-rem, Bank of America, account number

005495251731, in the name of Ligia Josefina Guedez, the account had a balance of $202,301.79, which became involved in the money laundering transaction, for a total of $242,301.79.

## FIRST CLAIM FOR FORFEITURE

(18 U.S.C. § 981(a)(1)(A) - Property Involved in and/or
Traceable to Money Laundering Transactions)
(18 U.S.C. § 984 - Fungible Property)

48. The allegations contained in paragraphs 1 through 47 of this Verified Complaint for Forfeiture In Rem are incorporated by reference.

49. Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture "any property, real or personal, involved in a transaction or attempted transaction in violation of section[] 1956 ..., or any property traceable to such property."

50. The defendants-in-rem, were property that was involved in money laundering transactions in violation of 18 U.S.C. § 1956(a)(1)(B)(i), or represented proceeds traceable to such property.

51. Under 18 U.S.C. § 984, which applies to this action, the United States need not identify the specific property subject to forfeiture because the property involved in the illegal conduct is a monetary instrument deposited in an account of a financial institution and this action is being brought within one year of the underlying offense.

52. Thus, the defendants-in-rem constitute property involved in and/or traceable to money laundering transactions conducted in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) or pursuant to 18 U.S.C. § 984, constitute property fungible with such property and is therefore liable to condemnation and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 984.

**SECOND CLAIM FOR FORFEITURE**
(18 U.S.C. § 981(a)(1)(A) - Property Involved in and/or
Traceable to Money Laundering Transactions)
(18 U.S.C. § 984 - Fungible Property)

53. The allegations contained in paragraphs 1 through 47 of this Verified Complaint for Forfeiture In Rem are incorporated by reference.

54. Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture "any property, real or personal, involved in a transaction or attempted transaction in violation of section[] 1956 ..., or any property traceable to such property."

55. The defendants-in-rem, were property that was involved in money laundering transactions in violation of 18 U.S.C. § 1956(h), or represented proceeds traceable to such property.

56. Under 18 U.S.C. § 984, which applies to this action, the United States need not identify the specific property subject to forfeiture because the property involved in the illegal conduct is a monetary instrument deposited in an account of a financial institution and this action is being brought within one year of the underlying offense.

57. Thus, the defendants-in-rem constitute property involved in and/or traceable to money laundering transactions conducted in violation of 18 U.S.C. §§ 1956(h) or pursuant to 18 U.S.C. § 984, constitute property fungible with such property and is therefore liable to condemnation and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 984.

Therefore, the United States requests that:

(a) the Court issue a Warrant of Arrest In Rem, in the form submitted with this Verified Complaint to the United States Department of Treasury, Internal Revenue Service, or any other duly authorized Law Enforcement Officer commanding an officer to (1) arrest the defendants-in-rem, and (2) give notice to all interested parties to appear and show cause why the forfeiture should not be decreed;

(b) this matter be scheduled for a jury trial;

(c) judgment for forfeiture be decreed against the defendants-in-rem; and

(d) this Court grant the United States its costs and whatever other relief to which it may be entitled.

Dated: February 13, 2012

NEIL H. MACBRIDE
United States Attorney

/s/ Karen L. Taylor
Karen L. Taylor
Assistant United States Attorney
U.S. Attorney's Office, Eastern District of Virginia
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314

COUNSEL FOR THE
UNITED STATES OF AMERICA

JENNIFER SHASKY-CALVERY, CHIEF
ASSET FORFEITURE AND
MONEY LAUNDERING SECTION

FREDERICK REYNOLDS, DEPUTY CHIEF
ASSET FORFEITURE AND
MONEY LAUNDERING SECTION

/s/ Aixa Maldonado-Quiñones
Aixa Maldonado-Quiñones
Trial Attorney

/s/ Kristen M. Warden
Kristen M. Warden
Trial Attorney
Asset Forfeiture and Money Laundering Section
Criminal Division
United States Department of Justice
1400 New York Avenue, N.W., 10th Floor
Washington, D.C. 20530
Telephone: (202) 514-1263

**VERIFICATION**

I, Michael W. Pohar, being duly sworn, depose and say that I am a Special Agent with the United States Internal Revenue Service, Criminal Investigation, and as such have responsibility for the within action, that I have read the contents of the foregoing Verified Complaint for Forfeiture in Rem and know the contents therein, and that the same is true to the best of my knowledge, information and belief.

The sources of my information and the grounds of my belief are official records and files of the United States, and information obtained by me and other law enforcement officers during an investigation of alleged violations of Title 18 of the United States Code.

/s/ Michael W. Pohar
Michael W. Pohar

STATE OF DC
COUNTY OF

Subscribed and sworn to before me this 13th day of February, 2012.

/s/ Barbara M. Newman-Jordan
Notary Public
My commission expires:

Barbara M. Newman-Jordan
Notary Public, District of Columbia
My Commission Expires 3/14/16